Filed 9/23/20  In re Raymon F. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION TWO

| | |
|---|---|
| In re RAYMON F., et al., Persons Coming Under the Juvenile Court Law. | B301287 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19LJJP00422D-F) |
| Plaintiff and Respondent. | |
| v. | |
| RAUL F., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Stephanie M. Davis, Juvenile Court Referee.  Affirmed.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel for Plaintiff and Respondent.

Appellant Raul F. (father), appeals from orders establishing dependency jurisdiction over his children Raymon (born 2015), Avamarie (born 2016), and Immanuel (born 2017). He contends there was insufficient evidence to support the juvenile court's findings that father's history of engaging in violent altercations against the children's mother (mother),[1] and his history of substance abuse and current abuse of alcohol placed the children at risk of serious physical harm. We affirm the juvenile court's orders.

## BACKGROUND

### Detention and section 300 petition

On May 27, 2019, the Los Angeles County Department of Children and Family Services (the Department) received a referral alleging emotional abuse by father. Father was reportedly intoxicated and arguing with mother when the altercation became physical. Father held mother down on the bed, choked her, and punched her in the face. When mother attempted to escape, father grabbed her by the back of her head, shoved her back onto the bed, and took her cell phone from her as she attempted to call the police. Raymon, Avamarie, and Immanuel were in the home during the incident, as was mother's daughter Makaylah. Makaylah heard mother yelling for help. Law enforcement responded, and father was arrested and released on bond the following day. Mother sustained a cut on her lip and hand, and scratches on her neck.

_____

[1] Mother is not a party to this appeal. Mother has three other children, Makaylah, Isaiah, and Anthony, who are not subjects of this appeal.

2

Mother told the responding social worker that father, Raymon, Avamarie, Immanuel, and Makaylah lived in the home with her. She identified father as the father of Raymon, Avamarie, and Immanuel. Her two other children, Anthony and Isaiah, lived with the maternal grandmother but visited with mother on the weekends.

Mother said that on May 26, 2019, she and father had been drinking alcohol at a friend's home and returned to their own home in separate cars. Mother arrived home first and was lying on her bed with Makaylah when father entered the room. Father told Makaylah to go to her room. Makaylah left, and father began choking mother with one hand and striking her on the face with the other hand. When father released her, mother reached for her phone to call 911, but father grabbed the phone out of her hand. Mother then took her nearby iPhone watch, ran out of the room and dialed 911. Law enforcement responded, and father was arrested.

Mother said Makaylah, Raymon, and Avamarie were in the home but in separate rooms during the violent incident. Immanuel was asleep in his crib in the same room as the parents at the time. Mother stated that Immanuel, who was born prematurely, uses a "g-tube" and oxygen and is under the care of specialists at Children's Hospital. She said none of the children witnessed the incident of domestic violence.

Mother said that before the May 26, 2019 incident, father had never physically assaulted her. She attributed father's violent behavior to his alcohol consumption and said he had been drinking from 2:00 p.m. that day. The social worker observed a large hole in the parents' bedroom door and asked mother whether father had caused the hole. Mother said she did not

remember. Mother reported obtaining a temporary emergency protective order against father but said she did not intend to obtain a permanent order. She planned on continuing the relationship and said she was considering living in separate homes until father received counseling. The social worker observed that Raymon, Avamarie, and Immanuel had no marks or bruises indicating abuse or neglect.

An incident report from the Palmdale Sherriff Station noted that father smelled of alcohol and was uncooperative with the investigating deputies during the May 26, 2019 incident. Mother described the incident to a deputy and said she began to see "stars" while father choked her. The deputy observed scratches on mother's neck and hand, a cut on her lip, and red spots in her eyes. Makaylah told the deputy she did not see the incident but heard mother screaming for help.

The social worker later interviewed Makaylah at her school. Makaylah said she lived at the maternal grandmother's home during the week and in mother's home on the weekends. She said she has observed father drinking beer at home and at his friends' homes. When asked whether father's behavior changed when he drank beer, Makaylah responded that father acted "woozy and dizzy" and held onto things so he would not fall. She said father curses at mother a lot when he drinks. Makaylah reported being afraid of father since the incident. The social worker asked Makaylah about the hole in the parents' bedroom door, and the child said mother had told her father broke the door to determine whether ants were inside it.

Makaylah said that on the night of the violent incident, she was asleep in mother's bed. When father came home, he told Makaylah to go to her room. After she left, she heard father ask

mother "Why you laughing?" Mother then asked why father had woken Makaylah when she was sleeping peacefully. Mother then began screaming. Law enforcement arrived and arrested father. Makaylah reported seeing a cut on mother's lip and redness around mother's neck.

Makaylah also reported a previous incident of aggressive behavior by father. She said father became angry when Makaylah's father, Joe, telephoned mother, and father broke mother's phone.

The social worker conducted separate interviews with Anthony, Isaiah, and the maternal grandmother. All three said they had seen father drink beer on occasion but denied any knowledge of domestic violence between mother and father. Anthony said father acts "weird" when drinking but denied that father's behavior was concerning.

The social worker also spoke by telephone with Joe (father of Makaylah and Isaiah), who said the children had not disclosed any physical violence between mother and father. Joe reported, however, that two months earlier mother and the children had come to live with him for a time because father had kicked mother out of the home. Joe further reported that his first meeting with father had ended in a physical altercation. Joe had been working as a DJ at a club when father approached him and asked to speak with him. When Joe refused, father "sucker punched" him.

On June 24, 2019, the Department filed a petition on behalf of Raymon, Avamarie, and Immanuel[2] under Welfare and

_____

[2]   Anthony, Isaiah, and Makaylah were also subjects of the petition but are not subjects of this appeal.

5

Institutions Code section 300, subdivisions (a) and (b),[3] alleging that father's history of domestic violence with mother, including a May 2019 incident for which father was arrested after choking mother and striking her in the face while the children were in the home, and a prior incident in which father excluded mother from the home; and mother's failure to protect the children by allowing father to reside in the home, placed the children at risk of serious physical harm. The petition further alleged, under section 300, subdivision (b), that father's history of substance abuse and current abuse of alcohol rendered him incapable of providing regular care and supervision of the children, that mother knew of father's substance abuse and failed to protect the children, placing them at risk of harm.

Father and mother were both present at the June 25, 2019 hearing during which the juvenile court found father to be the presumed father of Raymon, Avamarie, and Immanuel and ordered the children detained from him and released to mother. The court accorded father monitored visits and gave the Department discretion to liberalize the visits.

**Amended petition**

An amended petition filed in July 2019 deleted the allegations under section 300, subdivisions (a) and (b), that mother failed to protect the children from father's domestic violence, but added an allegation under subdivision (j) that father's domestic violence against mother placed the children's siblings Anthony, Isaiah, and Makaylah at risk of harm.

_____

[3]     All further statutory references are to the Welfare and Institutions Code.

6

**Jurisdiction/disposition**

In its July 2019 jurisdiction/disposition report, the Department informed the juvenile court that father had a 2014 dependency case involving domestic violence with the mother of his three older children. Allegations of emotional abuse against father in that case were deemed inconclusive, but allegations of general neglect against both parents were substantiated. Father's criminal history included charges or convictions between 2007 and 2019 for battery of a spouse and driving while under the influence of alcohol.

Mother told the social worker that she and father had been together for six years and have three children together. She and father were engaged to be married, and mother intended to continue the relationship. She denied any other incidents of domestic violence with father and said she had moved into the maternal grandmother's home to comply with the court's orders that she and father not live in the home together.

Mother denied that father had a substance abuse problem and said that while he drinks occasionally, he was not an alcoholic. She admitted, however, that father had been drinking throughout the day of the May 27, 2019 incident.

Father had retained counsel and did not make himself available to be interviewed by the Department.

**Adjudication**

At the July 26, 2019 adjudication hearing, the juvenile court sustained the allegations of the petition against father. The sustained allegations are as follows:

"a-1 amended
"The father . . . of the children, Raymon, Avamarie and Immanuel, has a history of engaging in violent altercations against the mother. . . . On 5/27/19, . . .

7

father choked the mother and struck the mother's face with the . . . father's hands in the children's home and while the children Makaylah, Raymon, Avamarie, and Immanuel were in the home. [F]ather grabbed the mother by the mother's neck and held mother face down on a bed. [F]ather grabbed the mother's cell phone to prevent the mother from contacting law enforcement. The mother sustained bruising to the mother's eye, a cut on the mother's lip and scratch marks to the mother's neck and hand. On a prior occasion . . . father excluded the mother from the children's home. On 5/27/19 . . . father was arrested for Inflict Corporal Injury Upon Spouse, False Imprisonment and Prevent Reporting of a Crime. Such violent conduct on the part of the . . . father endanger[s] the children's physical health and safety and places the children at risk of serious physical harm, damage and danger."

"b-1 amended
"The father . . . of the children Raymon, Avamarie and Immanuel, has a history of engaging in violent altercations against the mother. . . . On 5/27/19, . . . father choked the mother and struck the mother's face with the . . . father's hands in the children's home and while the children . . . were in the home. [F]ather grabbed the mother by the mother's neck and held mother face down on a bed. [F]ather grabbed the mother's cell phone to prevent the mother from contacting law enforcement. The mother sustained bruising to the mother's eye, a cut on the mother's lip and scratch marks to the mother's neck and hand. On a prior occasion . . . father excluded the mother from the children's home. On 5/27/19, . . . father was arrested for Inflict Corporal Injury Upon Spouse, False Imprisonment and

8

Prevent Reporting of a Crime. Such violent conduct on the part of the . . . father endanger[s] the children's physical health and safety and places the children at risk of serious physical harm, damage and danger."

"b-2
"The children . . . Anthony [M.], Isaiah [G.], Makaylah [G.], Raymon [F.], Avamarie [F.] and Immanuel [F.]'s mother[]'s male companion, Raul [F.], father of the children Raymon, Avamarie and Immanuel, has a history of substance abuse and is a current abuser of alcohol which renders the . . . father incapable of providing regular care and supervision of the children, Raymon, Avamarie, and Immanuel. On 5/27/19 and on prior occasions, . . . father was under the influence of alcohol in the presence of the children. The mother knew of . . . father's substance abuse and failed to protect the children. [F]ather's substance abuse and the mother's failure to protect the children endanger the children's physical health and safety and place the children at risk of serious physical harm, damage and failure to protect."

"j-1 amended
"On 5/27/19, Mother's male companion, Raul [F.], father to the siblings of Anthony [M.], Isaiah [G.], Makaylah [G.], choked the mother and struck the mother's face with his hands in the children's home and while the children Makaylah, Raymon, Avamarie, and Immanuel were in the home. The male companion grabbed the mother by the mother's neck and held mother face down on a bed. The male companion grabbed the mother's cell phone to prevent the mother from contacting law enforcement. The mother sustained bruising to the mother's eye, a

9

cut on the mother's lip and scratch marks to the
mother's neck and hand. On a prior occasion, the
male companion excluded the mother from the
children's home. On 5/27/19, the male companion
was arrested for Inflict Corporal Injury Upon Spouse,
False Imprisonment and Prevent Reporting of a
Crime. Such violent conduct on the part of the male
companion in the family home places the siblings,
Anthony [M.], Isaiah [G.] and Makaylah [G.] at risk
of serious physical harm, damage and danger."

The juvenile court declared Raymon, Avamarie, and
Immanuel dependent children, removed them from father's
custody, and ordered them placed in mother's home under the
Department's supervision. The court ordered father to
participate in conjoint counseling with mother, domestic abuse
counseling, individual counseling to address case issues, and
drug counseling with random or on demand testing. This appeal
followed.[4]

## DISCUSSION

## I. Justiciability

Because mother is not a party to this appeal, and there is
no appellate challenge to the jurisdictional findings pertaining to
her, we need not address the merits of father's appeal.[5] "'When a

_____

[4]     Father also appealed from dispositional orders removing
the children from his custody; however, the children were
subsequently returned to him, rendering that aspect of father's
appeal moot.

[5]     Father's contention that the juvenile court found mother to
be a non-offending parent is not supported by the record. The
juvenile court sustained the allegations, under section 300,

10

dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other statutory grounds for jurisdiction are supported by the evidence.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) The Department does not challenge the justiciability of father's appeal, and we exercise our discretion to consider the merits of that appeal.

## II. Jurisdiction

### A. *Applicable law and standard of review*

Section 300, subdivision (a) authorizes the juvenile court to assume jurisdiction over a child if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian." A court may find a substantial risk of the requisite harm "based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian that indicate the child is at risk of serious physical harm." (§ 300, subd. (a).)

Subdivision (b) similarly authorizes the dependency court to assume jurisdiction over a child if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of

---

subdivision (b), that mother failed to protect the children from father's substance abuse.

11

his or her parent . . . to adequately supervise or protect the child."
(§ 300, subd. (b).)

Subdivision (j) authorizes dependency jurisdiction when a child's sibling was abused or neglected and there is a substantial risk the child will also be abused or neglected. (§ 300, subd. (j).) In determining whether a child is at substantial risk, a court considers the totality of the circumstances. (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 817.)

Father contends the juvenile court's orders must be reversed because there was insufficient evidence that the children or their siblings suffered or were at substantial risk of suffering serious physical harm inflicted non-accidentally as the result of a one-time incident of domestic violence during which none of the children were harmed. Father further contends there was insufficient evidence that he abused alcohol. We review father's challenge to the sufficiency of the evidence supporting the juvenile court's jurisdictional orders under the substantial evidence standard. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 450.) Under that standard, "the issue is whether there is evidence, contradicted or uncontradicted, to support the finding. In making that determination, the reviewing court reviews the record in the light most favorable to the challenged order, resolving conflicts in the evidence in favor of that order, and giving the evidence reasonable inferences. Weighing evidence, assessing credibility, and resolving conflicts in evidence and in the inferences to be drawn from evidence are the domain of the trial court, not the reviewing court. Evidence from a single witness, even a party, can be sufficient to support the trial court's findings. [Citations.]" (*Id*. at pp. 450-451.)

12

### B. *Substantial evidence supports the jurisdictional findings*

#### 1. Domestic violence

Substantial evidence supports the juvenile court's findings, under section 300, subdivisions (a), (b), and (j), that father's violence against mother placed the children at substantial risk of suffering serious physical harm. That none of the children suffered actual harm during the violent incident by father against mother, did not preclude the juvenile court's assumption of jurisdiction over them. The juvenile court need not wait until the children are harmed before taking action to protect them from father's violent conduct. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194-196.) Domestic violence in the home places a child at risk of encountering violence and suffering serious physical harm as a result. (*Id.* at p. 194.) The record shows that Immanuel, a child of tender years who required special medical care, was in a crib in the same room when father attacked mother. Raymon and Avamarie were also young children of tender years, making them particularly vulnerable to father's violent outbursts. The record shows that the May 27, 2019 incident involved severe violence by father against mother. Father held mother down on a bed, choked her until she "saw stars," repeatedly hit her in the face, and prevented her from using her cell phone to call for help.

Although mother denied any other instances of violence, there is sufficient evidence in the record to support a finding that domestic violence was an ongoing problem for the parents. Makaylah disclosed that father had broken mother's phone because he became upset when Makaylah's father telephoned. Makaylah also stated that father cursed at mother when he

13

became intoxicated. The social worker observed a large hole in the parents' bedroom door and received conflicting explanations as to whether the damage was caused by father. Father had excluded mother from the home a few months before the incident that culminated in his arrest and the current case. "'[P]ast violent behavior in a relationship is "the best predictor of future violence."'" (*In re E.B.* (2010) 184 Cal. App. 4th 568, 576; *In re Rocco M., supra*, 1 Cal.App.4th at p. 824 ["evidence of past conduct may be probative of current conditions"].)

There was also evidence that father had unresolved issues of domestic violence in his relationships with others. He had a 2014 dependency case involving domestic violence against the mother of his three older children, and his criminal record included charges of spousal battery. Makaylah's father, Joe, stated that father "sucker punched" him during their first meeting.

Substantial evidence supports the juvenile court's jurisdictional finding that father's violence against mother placed the children at substantial risk of harm.

### 2. Alcohol abuse

Substantial evidence also supports the jurisdictional findings relating to father's alcohol abuse. Mother told the social worker that father had been consuming alcohol from 2:00 p.m. on the day of the domestic violence incident and that she believed father's violent behavior stemmed from his alcohol consumption. Law enforcement officers who responded to the home reported that father smelled of alcohol. Makaylah stated that father acted "woozy and dizzy" when he drank beer and often cursed at mother when he consumed alcohol. Half-siblings Anthony and Isaiah, who did not reside in the family home but lived with the

14

maternal grandmother, also reported seeing father consume alcohol.  Anthony noted that father's behavior changed when he drank and that he became "weird."  Father's criminal history included an arrest for driving under the influence of alcohol.

Raymon, Avamarie, and Immanuel were children of tender years, and Immanuel, who was born five months premature, had special medical needs, requiring a "g-tube" and oxygen.  There is substantial evidence in the record that father's alcohol consumption and recurring interpersonal issues related to his alcohol use placed the children at substantial risk of harm.

## DISPOSITION

The juvenile court's orders establishing dependency jurisdiction over the children are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
CHAVEZ

We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST